UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

        v.                                   Case No. 03-C-1427

HEARTLAND ADVISORS, INC.,
WILLIAM J. NASGOVITZ,
PAUL T. BESTE,
JILAINE H. BAUER,
THOMAS J. CONLIN,
GREG D. WINSTON,
KEVIN D. CLARK,
KENNETH J. DELLA,
HUGH F. DENISON,
RAYMOND R. KRUEGER,

        Defendants.

---

**ORDER GRANTING DEFENDANT NASGOVITZ'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT KRUEGER'S MOTION FOR SUMMARY JUDGMENT**

        Pending before the court are separate motions for summary judgment filed by defendants William J. Nasgovitz and Raymond R. Krueger. For the reasons discussed below, these motions will be granted.

**FINDINGS OF FACT**

        Defendant Nasgovitz is the President of Heartland Advisors, Inc., (Heartland) (Pl.'s Br. in Opp'n Ex. 2 ¶ 9.) At the end of July of 2000, he was responsible for approximately 600 accounts holding almost $800 million in assets. (Nasgovitz (WJN) Br. in Supp. Ex. 5 ¶ 3.) Of these accounts, approximately 500 were "registered representative" accounts and approximately 100 were "managed accounts." (*Id.*) The registered representative accounts

contained a small fraction of the assets held in the accounts Nasgovitz supervised – approximately $25 million – with an average balance per account of only about $50,000. (*Id.* ¶ 4.) In contrast, the managed accounts held approximately $770 million of assets, with an average balance per account of about $7.7 million. (*Id.*) In addition to supervising the registered representative accounts, Nasgovitz was the lead portfolio manager for two of Heartland Group's equity/stock funds. (Nasgovitz (WJN) Br. in Supp. Ex. 1 ¶ 5.) The equity/stock funds held over $1.1 billion of assets. (*Id.*)

In 1997, defendant Krueger opened equity and bond accounts (including the Short Duration Fund (SDF)) at Heartland. (WJN Br. in Supp. Ex. 2 at 47.) All of Krueger's accounts were registered representative accounts, not managed accounts. (WJN Br. in Supp. Ex. 5 ¶ 5.) When Krueger wanted to take action on his accounts, he contacted Sokolow and worked with her to administer his accounts and process trades. (WJN Br. in Supp. Ex. 4 at 18.) At the end of 1997, Krueger's SDF account contained $71,647. (Pl.'s Br. in Opp'n Ex. 49.) In April of 1998, Krueger withdrew $25,010 from his SDF account, and in August of 1999, he withdrew $24,012. (WJN Br. in Supp. Ex. 7 at RBK 0000101-102.) Thus, in September of 2000, roughly $25,000 remained in his SDF account.

On September 8, 2000, Nasgovitz and Krueger met for lunch. (WJN Br. in Supp. Ex. 2 at 63.) At that time, due to an upcoming devaluation of SDF, Nasgovitz was under an internal compliance restriction prohibiting him from making recommendation regarding SDF. (WJN Br. in Supp. Ex. 3 at 469-70.) Before lunch, Krueger stopped by the Heartland offices, where he told Nasgovitz's administrative assistant, Mary Sokolow, that he wanted to see her for business after lunch. (Pl.'s Br. in Opp'n Ex. 10 at 166.) In advance of the lunch meeting, Sokolow prepared a summary of all of Krueger's holdings at Heartland. (*Id.* at 162-164.) She

2

had prepared similar documents in the past for Krueger and for Nasgovitz's other clients. (*Id.* at 161-62.) After lunch, Krueger and Nasgotivz walked back to Heartland, where Krueger directed Sokolow to liquidate his SDF account. (WJN Br. in Supp. Ex. 2 at 88-90; Ex. 6 at 168-72.) Additionally, on September 14, 2000, Krueger liquidated a $2,621 account with T. Rowe Price and a $25,712 account with American Express Financial. (WJN Br. in Supp. Ex. 2 at 97.)

Krueger stated that his reasons for liquidating his SDF accounts were (1) a car purchase; (2) a jewelry purchase; (3) tax payments; (4) investment simplification due to his wife's inheritance; and (5) investing in "the new economy." (*Id.* at 47-48.) Copies of check on file confirm that Krueger (1) bought a car shortly before liquidating his SDF account (WJN Br. in Supp. Ex. 7 at RBK0000004); (2) bought jewelry (*Id.* at RBK0000009); (3) paid taxes (*Id.* at RBK0000007); and (4) purchased Ansys and Exabyte stock (*Id.* at RBK0000008).

In 2000, HAI, Nasgovitz, his mother and mother-in-law held investments in SDF. (WJN Br. in Supp. Ex. 1 ¶¶ 10-11.) On September 30, 2000, Sylvia Nitschke – Nasgovitz's mother – had $86,982.18 in an SDF account, and Erma Cushing – Nasgovitz's mother-in-law – had $92,861.19 in SDF shares. (*Id.* at ¶ 10; WJN Br. in Supp. Ex. 5 ¶ 6.) Further, Nasgovitz's SDF account contained $14,583.51, and HAI's SDF account contained $507,741.89. (WJN Br. in Supp. Ex. 1 at ¶ 11.) However, neither HAI nor the three individuals liquidated any SDF shares in 2000. (*Id.* ¶¶ 10, 11.) On the other hand, in the first nine months of 2000, investors generally were redeeming more SDF shares than they were purchasing. (WJN Br. in Supp. Ex. 5 ¶ 9.)

**DISCUSSION**

      I.      Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; however, there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

II.  SEC's Insider Trading Claims

The SEC asserts that defendants Nasgovitz and Krueger violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated pursuant to it.  To establish liability, the SEC must prove that (1) Nasgovitz possessed material nonpublic information regarding the Short Duration Fund (SDF); (2) Nasgovitz disclosed that information to Krueger; (3) the disclosure violated Nasgovitz's fiduciary duty; and (4) Krueger knew or should have known that the disclosure was improper.  *SEC v. Maio*, 51 F.3d 623, 631-32 (7th Cir. 1995).  For the purpose of this motion, defendants Nasgovitz and Krueger concede that Nasgovitz possessed material nonpublic information relating to the SDF, but argue that he did not communicate the information to Krueger.  (WJN Br. in Supp. 14.) They reserve the right to dispute the rest of the elements at a later stage.  (*Id.* n. 14.)

Plaintiff reponds that Nasgovitz must have tipped off Krueger about the upcoming devaluation of SDF, because the two of them met at a time when Nasgovitz possessed insider information, and Krueger liquidated the troubled positions immediately after the meeting. Plaintiff cites *Freeman v. Decio*, among other cases, for the proposition that "evidence of suspicious timing of securities trades relative to contact between the person making such trades and a corporate insider gives rise to an inference that the trader possessed material, non public information at the time of the trade." (Pl. Br. in Opp'n 18). Indeed, *Freeman* states that

> When it is shown that an insider made a sudden sale of a significant portion of his holdings of his corporation's stock and that subsequently, material adverse information became public concerning the corporation which led to a significant drop in the price of the stock, an inference arises that the insider was "bailing out" on the basis of material inside information.

5

584 F.2d 186, 197 n. 4 (7th Cir. 1978). Consistently with *Freeman*, plaintiff maintains that "[t]he timing of the trade, the negative information that Nasgovitz knew regarding the Short Duration Fund at the time of the lunch and the fact that Krueger liquidated his Short duration fund holdings, give rise to an inference that Krueger traded on inside information provided by Nasgovitz." (Pl.'s Br. in Opp'n 19.)

While plaintiff concludes that "[t]he timing and amount of the trade alone is sufficient to overcome this motion," (*Id.*), *Freeman* states that "this inference can be nullified by a showing that sales in question were consistent in timing and amount with a past pattern of sales or that other circumstances might reasonably account for their occurrence." *Freeman*, 584 F.2d at 197 n. 4. Thus, a complete reading of the precedent reveals that, although an inference of insider trading may arise in this case – where a significant sale occurred after a meeting with an insider – the inference can be nullified if Krueger can show that "that sales in question were consistent in timing and amount with a past pattern of sales." *Id.*

In this case, Krueger has demonstrated a pattern of liquidating his SDF investment. Namely, he sold roughly one-third of the funds in April of 1998, another third in August of 1999, and a final third – which constitutes the subject of this motion – in September of 2000. (WJN Br. in Supp. Ex. 7 at RBK 0000101-102.) This pattern serves to nullify the inference of insider trading under *Freeman*.

Additionally, to support its contention that Krueger liquidated his SDF account following a tip from Nasgovitz, the SEC (1) suggests that Krueger's reasons for liquidating his SDF account are contradictory; (2) cites Mary Sokolow's testimony contradicting that of Krueger's; (3) suggests that the testimony of Nasgovitz and Krueger are contradictory and their arguments are weak and unpersuasive to the extent that they rely on "self-serving" affidavits;

6

and (4) argues that Nasgovitz tipped off other clients also. Below is a detailed review of the arguments.

First, the SEC argues that Krueger's reasons for liquidating his SDF accounts are contradictory and, therefore, false. (Pl. Br. in Opp'n 11-13.) Krueger has given several reasons for liquidating his bond holdings: (1) a car purchase; (2) a jewelry purchase; (3) tax payments; (4) investment simplification due to his wife's inheritance; and (5) investing in "the new economy." (WJN Br. in Supp. Ex. 2 at 47-48.) It is reasonable to believe that an individual has more than one reason to act in a certain way, and none of the reasons may be the defining one. For example, it is possible that Krueger liquidated his SDF account, along with T. Rowe Price and American Express, for all of the reasons he listed. The question is whether his reasons are genuine, not whether they are few or many or listed all at the same time. The evidence shows that Krueger (1) bought a car[1] shortly before liquidating his SDF account (WJN Br. in Supp. Ex. 7 at RBK0000004); (2) bought jewelry (*Id.* at RBK0000009); (3) paid taxes (*Id.* at RBK0000007); and (4) purchased Ansys and Exabyte stock (*Id.* at RBK0000008). Hence, there is no contradiction among his reasons for liquidating the bonds.

Next, the SEC points to Mary Sokolow's testimony that (1) Krueger told her before lunch that the two of them "have some business to do" when he gets back; (2) although Krueger testified that he wanted to get a "tour" of the new Heartland facility, he left immediately after conducting a transaction; (3) Sokolow prepared a summary of Krueger's holdings and

---

[1] Although Krueger bought his car a little over a month before liquidating SDF, he could have relied on the upcoming sale of the bonds to finance the purchase.

7

gave it to him before he departed for his lunch with Nasgovitz; and (4) "Sokolow specifically noted on her calendar Krueger's sale."[2]  (Pl. Br. in Opp'n at 9-10, 13-14, PPFOF 87.)

Sokolow's testimony does not advance the SEC's case.  First, Krueger's instruction that they had business to do after lunch negates the insider trading implication more than confirming it, because it indicates that Krueger intended to manage his account before he lunched with Nasgovitz.  Plaintiff does not suggest that Krueger knew prior to lunch that he would get an insider tip.  Thus, a pre-lunch intent to manage an account is not indicative of an insider tip-off.

Second, the SEC makes much of the Heartland offices tour that Krueger allegedly testified to and never had.  SEC's proposed finding of fact 87 states, "Defendant Krueger, (sic) claims that he came back to HAI's offices for a "tour" after lunch.  However, a thorough review of citations given for that proposition reveals that Krueger never said anything about a tour.  Krueger's deposition testimony is as follows:

> Q. What else did you discuss in [Nasgovitz's] officer after lunch?
> A. We never sat down.  It was sort of a walk in and out.
> Q. How long were you there?
> A. A few minutes. He said here's the new place.  I said it looks pretty nice.  I remember going up an elevator, down an elevator. I think he's up on one of the upper floors.  Then I went back to work.
> Q. Did you go into his office?
> A. No.
> Q. Did you go into anybody else's office?

---

[2] SEC's proposed findings of fact concerning Mary Sokolow's involvement are contradictory. *Compare* PPFOF 92 (stating that "Sokolow . . . claims that she knew about the lunch even though she did not make entries on Nasgovitz's calendar and she did not speak to Defendant Krueger before lunch") *with* PPFOF 94 (stating that "Sokolow claims that Defendant Krueger came to the office before lunch and she gave Krueger the written summary") *and* PPFOF 95 (stating that "[a]t the time Defendant Krueger allegedly told [Sokolow] '. . . . I think I have some business to do with you . . . ."  Additionally, SEC's citation for PPFOF 92, stating that Sokolow did not see Krueger before lunch does not support the proposed finding.

8

> A. No. I just got off the elevator and looked around, it's a nice new office, and very nice, looks pretty impressive, I got to go back to work.

(Pl.'s Br. in Opp'n. Ex. 7 at 68-69.) Further, Krueger's Wells submission states that "Mr. Krueger and Mr. Nasgovitz stopped at Heartland's office *to see the new building.*" (Pl.'s Br. in Opp'n. Ex. 8 at 4.) (emphasis added). Thus, the evidence demonstrates that not only is the word "tour" absent from Krueger's deposition testimony and Wells submission, but that Krueger stated specifically that "[i]t was sort of a walk in and out."[3] *(Id.* at 68.)

Third, the SEC questions Sokolow's motives in preparing a summary of Kruger's holdings prior to his lunch with Nasgovitz. (Pl. Br. in Opp'n 14.) However, the SEC fails to acknowledge that previously Sokolow made similar summaries for Krueger and other clients.[4]

---

[3] By putting the word "tour" in quotes, the SEC indicates that Krueger used that word in his testimony – a misleading indication, at best. Perhaps the SEC is not unlike Britney Spears in its inability to use quotation marks correctly. In her now-infamous interview with Matt Lauer, the erstwhile pop star said, "I think 90 percent of the world agrees that the tabloids have kind of gone a little 'far' with me lately." Interview by Matt Lauer with Britney Spears in L.A., Cal. (June 15, 2006) (putting the word "far" in air quotes). *See also* US Weekly Magazine, http://www.usmagazine.com/blog/category/air-quotes/ ("As evidenced in her Dateline interview, [Britney Spears] has a knack for misusing air quotes, placing them in between words or around the wrong ones.")

[4] Plaintiff's pattern of misquoting an opponent and misrepresenting facts and law is especially distressing. First, the SEC has misquoted defendant Krueger as testifying that he wanted to tour Heartland offices (*see supra* at 7). Second, it implied that it was unusual and suspicious that Sokolow prepared an account summary for Krueger before his lunch meeting her boss. However, the SEC failed to mention that Sokolow had created similar documents for Krueger and other clients. (*See supra* at 7-8). Third, the SEC represented that Krueger's Wells submission stated that "he sold [his SDF shares] as part of a predetermined plan to sell one-third of his holdings each year for three years." (Pl. Br. in Opp'n 13). A review of the relevant portion of Krueger's Wells submission reveals that there is no discussion of a predetermined plan. Rather, Krueger argues that he established a *prior pattern* of SDF liquidation, (WJN Reply Br. 3), but does not suggest that he planned to sell a third of his SDF holdings each year. Fourth, the SEC stated that Krueger testified that he did not know that Nasgovitz was his account representative (Supp. PPFOF 25) when all Krueger said is that he did not know what the term "representative" meant (Pl.'s Br. in Opp'n Ex. 7at 33-35). Finally, the SEC cited Tom Conlin's e-mail stating, "I think the regulators would find it more than a coincidence that all of Bill accounts decided to begin selling on the Monday (8/21) after I initially resigned," (Supp. PPFOF 71), but failed to cite Conlin's SEC testimony, where he stated that he had no knowledge, information, or evidence that Nasgovitz behaved inappropriately. (WJN Br. in Supp. Ex. 19 at 249-52.) Moreover, Conlin testified that he reported his initial concern to Heartland's general counsel, who "looked into it and was satisfied that there was nothing inappropriate." (*Id.*)

In addition to playing fast and loose with the facts, the SEC has cited an incomplete holding of *Freeman v. Decio*, failing to state that an inference of insider trading may be negated by demonstrating a prior

9

(WJN Reply Br. Ex. 7 at 161-62.) Sokolow is Nasgovitz's assistant (Pl. Br. in Opp'n 9), and there is nothing unusual or sinister about preparing a summary of a client's holdings before the client's business lunch with her boss. Fourth, Sokolow's note on her calendar that she liquidated Krueger's SDF account provides no clue as to whether the fund was sold due to an inside tip.

Next, the SEC suggests that Krueger and Nasgovitz gave inconsistent testimonies regarding whether Krueger's SDF account was mentioned during lunch: Nasgovitz testified that it was mentioned, and Krueger testified that it was not. (Pl. Br. in Opp'n 13-14.) Even if defendants had mentioned Krueger's SDF holding, it does not mean that Nasgovitz disclosed insider information regarding to the bonds. Additionally, the SEC argues that the affidavits submitted in support of defendants' summary judgment motions are unreliable because they are self-serving. Fed. R. Civ. Pro. 56(e) does not prohibit or give lesser weight to self-serving affidavits. Moreover, all evidence submitted in support of a case tends to be self-serving. Therefore, Krueger's and Nasgovitz's self-serving statements are accorded the same weight as any other admissible evidence.

Finally, in an attempt to prove that Nasgovitz tipped off Krueger, the SEC states that Nasgovitz tipped off several other clients. (Pl.'s Br. in Opp'n 28.) Essentially, the SEC's argument is that in tipping off Krueger, Nasgovitz acted consistently with his prior acts. Even

---

pattern of trades (*see supra* at 4-5). To be sure, the SEC is free to argue that Krueger has not established such a pattern. However, it is obligated to quote authorities accurately. Therefore, the court urges the SEC's counsel (1) to review Wisconsin Rule of Professional Responsibility 20:3.3 (explaining an attorney's duty to be candid with the court); and (2) to remember that a suit by the SEC is akin to a criminal prosecution in that it is accusing an private individual of wrong-doing. In such cases, the SEC acts as "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

10

if that were true, it is inadmissible character evidence under Fed. R. Evid. 404(b). Regardless, the SEC provides no evidence that Nasgovitz tipped off his other clients.[5] Such naked assertions do not warrant an extended discussion.

In sum, the SEC has not proffered any evidence to demonstrate a genuine issue of material fact entitling it to a trial on its insider trading claim against defendants Nasgovitz and Krueger.

Therefore,

IT IS ORDERED that defendant Nasgovitz's motion for summary judgment are GRANTED.

IT IS FURTHER ORDERED that defendant Krueger's motion for summary judgment are GRANTED.

IT IS FURTHER ORDERED that defendants Krueger and Nasgovitz are dismissed from this case.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

---

[5] Pages 19 to 25 of the SEC's brief in opposition to summary judgment are replete with factual assertions without any citations to admissible evidence in this record. Such practice is in violation of Civil L.R. 56(d), stating that "[a]ll factual assertions made in any brief must be supported by both specific citations to evidentiary materials in the record and the corresponding stipulated fact or proposed finding of fact." Therefore, the court has disregarded all the factual assertions in the SEC's brief that fail to comply with the rule.

11