UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

        v.                                     Case No. 03-C-1427

JILAINE H. BAUER,

        Defendant.

---

DECISION AND ORDER GRANTING JILAINE H. BAUER'S MOTION FOR
SUMMARY JUDGMENT (DOC. 483) AND DISMISSING CASE

On May 25, 2011, this court granted summary judgment to the Securities and Exchange Commission ("SEC") on the insider trading claims brought against defendant Jilaine H. Bauer. Relying on the parties' stipulation that Bauer was an insider who possessed nonpublic information at the time she sold her Short Duration Fund shares, the court found that there were no genuine issues of material fact that (1) the information Bauer possessed was material and (2) she acted with scienter. The SEC filed an unopposed motion to dismiss all remaining allegations and counts of the first amended complaint against Bauer with the exception of the counts "relating solely to Bauer's insider trading as discussed in the Court's May 25, 2011, decision." (Docs. 460, 461.) Bauer filed an appeal, and the Seventh Circuit Court of Appeals reversed and remanded for further proceedings. *SEC v. Bauer*, 723 F.3d 758 (7th Cir. 2013).

1

On appeal, the SEC declined to defend its classical theory of insider trading. Instead, the SEC argued for the first time that Bauer's conduct fits under a misappropriation theory. The Seventh Circuit found that the SEC "abandoned and forfeited" the classical theory as a basis for liability. *Bauer*, *723* F.3d at 771. In its decision, the Seventh Circuit provided the court with the following directive:

> This case is unusual — it is one of few instances in which the SEC has brought insider trading claims in connection with a mutual fund redemption. No federal court has opined on the applicability of insider trading prohibitions to the trade of mutual fund shares. The parties did not adequately alert the district court to the novelty of the claims involved in this case, and as such the district court did not consider several of the threshold legal questions that are now before us. We decline to rule on these issues in the first instance absent a ruling from the district court. We reverse the order entering summary judgment and remand so that the district court can 1) rule on whether Bauer's alleged conduct properly fits under the misappropriation theory of insider trading; 2) dismiss the insider trading claims against Bauer if it determines the answer to this question is "no," and hold a trial if it determines the answer is "yes."

*Bauer*, 723 F.3d at 762.

Following the remand, Bauer filed a motion for summary judgment with respect to the SEC's misappropriation theory. Bauer argues that the misappropriation insider trading claim is not a violation "relating solely to Bauer's insider trading as discussed in the May 25, 2011, decision" and therefore falls within the SEC's Rule 41 motion for the dismissal of all remaining claims with prejudice. Additionally, Bauer argues that the misappropriation theory applies to outsiders whereas she was an insider at the time she redeemed her shares and for more than a year after that date. Along the same lines, a showing of deception is central to the misappropriation theory and there is no showing of deception toward the source of Bauer's information where the fund authorized employees to redeem their shares and Bauer clearly identified herself to the fund at the time of redemption.

Finally, Bauer argues that insider trading liability has never been, and should not be, imposed on mutual fund purchases and redemptions at fixed prices. Having carefully considered the record and all controlling authority, the court will grant Bauer's motion for summary judgment and dismiss this case.

## Summary Judgment Standard

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making such a determination, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## FINDINGS OF FACT

The court incorporates by reference its findings of fact in its May 25, 2011, decision on the cross motions for summary judgment, as well as the facts set forth in the decision of the Seventh Circuit. *Bauer*, 723 F.3d at 762-767. The court supplements its findings with the following:

On October 3, 2000, when Bauer phoned to place her order redeeming her shares in the Short Duration Fund, she was recognized by Kim O'Connor who worked in Shareholder Services at Heartland Advisors. (10/14/13 Bauer Decl. at ¶ 1-2, Ex. 1-2; 10/26/05 O'Connor Dep. at 8-9.) The transcript of the call makes clear that Bauer was not

3

trying to conceal her identity in redeeming her shares inasmuch as it shows that Bauer specified her transaction details and directed order execution only after she made sure that her call was recorded, consistent with company policy. (10/14/13 Bauer Decl., Ex. 2.) The audio of the call is reflected in the transcription below:

| | |
|---|---|
| K. O'Connor: | Thank you for calling Heartland Funds, America's Value Investor. This is Kim O'Connor. How can I help? |
| J. Bauer: | Good morning, Kim. Jilaine. |
| K. O'Connor: | Hi. |
| J. Bauer: | How are you? |
| K. O'Connor: | I'm okay. How are you? |
| J. Bauer: | I'm okay. Busy yet? |
| K. O'Connor: | No, you're my first call. |
| J. Bauer: | Well, I'm getting ready to run out the door, but I wanted to call and um, put in an order. |
| K. O'Connor: | Okay. |
| J. Bauer: | Um, let's see, it's the short duration fund. |
| K. O'Connor: | Mm-hm |
| J. Bauer: | Um, account number ... 023. |
| K. O'Connor: | Okay. |
| J. Bauer: | And I want to redeem it. |
| K. O'Connor: | Okay. And I'm having problems getting into my computer. |
| J. Bauer: | Oh, that's what they all say when you - |
| K. O'Connor: | Well, I really am. I had to change my password yesterday and now it won't take it, so ... um ... |
| J. Bauer: | Now, are you on a recorded line? |
| K. O'Connor: | I am. |
| J. Bauer: | Um. Why isn't it beeping? |
| K. O'Connor: | Um, because the - the new and improved. Yeah, I think most places have replaced their systems with something that doesn't beep. |
| J. Bauer: | Well, then how do people know you're on a recorded line? |
| K. O'Connor: | It tells them on the automated line when you dial in. All telephone conversations are recorded. |
| J. Bauer: | Oh, that's right. Okay. Good. |
| K. O'Connor: | Um, okay, and this is a joint with you and Gary. |
| J. Bauer: | Right. |
| K. O'Connor: | And how much did you wanna sell? |
| J. Bauer: | All of it. |
| K. O'Connor: | Okay. And do you wanna have the check pouched over here? |
| J. Bauer: | Um- |
| K. O'Connor: | Or do you want me to wire it? |

| | |
|---|---|
| J. Bauer: | Um, it's just - you can mail it or wire - whichever - whatever is easiest. |
| K. O'Connor: | Okay. Um, well, it's really whatever's easy for you. |
| J. Bauer: | Oh. |
| K. O'Connor: | We can drop it in the mail. North Shore ___ Lane. |
| J. Bauer: | Why don't you just have 'em mail it. |
| K. O'Connor: | Okay. We'll do that. And then it'll go out late tomorrow. |
| J. Bauer: | Okay. |
| K. O'Connor: | Okay. And then I've got your phone number - don't need any of that stuff. But I do – do you wanna take a confirmation number down, or ..." |
| J. Bauer: | No, I - I think - |
| K. O'Connor: | Okay. |
| J. Bauer: | _____ verifying it. |
| K. O'Connor: | Okay. It's written down so we know when I talked to you. |
| J. Bauer: | Okay. |
| K. O'Connor: | Okay? |
| J. Bauer: | Thank you ma'am. |
| K. O'Connor: | You too. |
| J. Bauer: | I'll see you. |
| K. O'Connor: | Bye. |
| J. Bauer: | Bye-Bye. |

(Bauer Decl. at Ex. 2.)

While this case was pending and after the court granted the SEC's motion for summary judgment, counsel for the SEC proposed that, in order to obtain immediate entry of a judgment decreeing relief based upon the insider trading finding, it would voluntarily dismiss the remainder of the case against Bauer. Counsel then provided Bauer's counsel with a draft motion for voluntary dismissal under Rule 41 of the Federal Rules of Civil Procedure. (10/14/03 Ryan S. Stippich Decl. at ¶ 3, Ex. B.) Bauer's counsel suggested revisions to clarify that everything except for the insider trading claim as discussed in this court's May 25, 2011, opinion was being dismissed with prejudice. This included the insertion that "all allegations and all nine counts of the First Amended Complaint" would be dismissed except for the specific violations "relating solely to insider trading found in the

court's May 25, 2011, decision." (Stippich Decl. at ¶ 4, Ex. C.)  Bauer's counsel indicated that the motion would be unopposed based upon the suggested changes.  (*Id.*)

Later, on September 19, 2011, the SEC moved to dismiss all of its other "allegations and charges" against Bauer pursuant to Rule 41 of the Federal Rules of Civil Procedure. The SEC's motion made clear that it was dismissing everything - all "allegations and charges" - not addressed by the May 25, 2011, decision, and stated in relevant part:

> Plaintiff, Securities and Exchange Commission ("Commission"), pursuant to Rule 41 of the Federal Rules of Civil Procedure, moves the court to dismiss the allegations and charges made against Defendant Jilaine H. Bauer ("Bauer") in the First Amended Complaint (Doc. No. 283) that the Court did not address in its Decision On Cross Motions For Summary Judgment On The Insider Trading Claim (Doc. No. 453).  In support of this motion, the Commission states as follows:
>
> 1. On May 25, 2011, this Court issued its decision granting in part the Commission's motion for partial summary judgment against Bauer (Doc. No. 453).  In that decision, the Court made findings of fact and conclusions of law regarding Bauer's fraud in connection with her sale of shares of the Heartland Short Duration High Yield Municipal Fund while in possession of material, non-public information.  *Id.*
> *2.* A scheduling conference is currently set for this matter on September 20, 2011.  Counsel for the Commission intends to appear telephonically, as approved by the Court (Doc. No. 459).
> 3. Pursuant to Fed. R. Civ. P. 41, the Commission respectfully requests that all allegations and all nine counts of the First Amended Complaint against Bauer be dismissed with prejudice except for the violations of Section 17(a) of the Securities Act of 1933 (Counts I and II), Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (Count II), and Section 36(a) of the Investment Company Act of 1940 (Count VIII) relating solely to insider trading found in the Court's May 25, 2011, decision.  Thus, the only matter remaining in this action will be the entry of any Final Judgment and Order of Permanent Injunction against Bauer.
> 4. The Commission intends to file a motion for a Final Judgment and Order of Permanent Injunction relating to the findings of fraud against Bauer in connection with her insider trading.  Included in that filing will be a request for disgorgement, prejudgment interest, and civil penalties.

5. Therefore, the Commission respectfully requests that all remaining allegations against Bauer be dismissed with prejudice.
6. Without agreement to the Commission's characterizations of the evidence or findings of this Court, and without waiving and expressly reserving all of her other rights, including without limitation her right to appeal and to contest any remedies sought by the Commission, Bauer does not object to the relief requested in this Motion.

(Doc. 460.)

The next day, September 20, 2011, this court granted the SEC's motion and ordered "that all nine counts" of the complaint against Bauer be dismissed "with prejudice," except for the violations "relating solely to Bauer's insider trading as discussed in the court's May 25, 2011, decision." The full ruling is as follows:

IT IS ORDERED that the motion is granted and that all nine counts of the First Amended Complaint against Jilaine H. Bauer are dismissed with prejudice, except for the violations ... relating solely to Bauer's insider trading as discussed in the Court's May 25, 2011, decision.

(Doc. 461.)

## CONCLUSIONS OF LAW

The starting point for this court's analysis is the fact that the SEC never raised a misappropriation theory with this court. This case was filed on December 11, 2003. (Doc. 1.) Almost five years later, Bauer and the SEC filed cross motions for summary judgment. At page 28 of the SEC's brief in support of its motion, the SEC wrote:

Under the classical theory of insider trading, traditional insiders of an issuer, such as officers, directors and employees, in possession of material, non-public information have a fiduciary duty to the issuer and its shareholders to publicly disclose such information or to abstain from trading in the issuer's securities. *See Chiarella v. United States*, 445 U.S. 222, 230 (1980) ("Corporate insiders ... have an obligation to place the shareholder's welfare before their own.") If an insider trades or tips while in possession of the material, non-public information, the insider's failure to disclose the information prior to trading or tipping operates as a fraud. *See Id.* at 228. Under the misappropriation theory of insider trading, a person violates the

7

> antifraud provisions of the federal securities laws when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information. *United States v. O'Hagan*, 521 U.S. 642, 652 (1997). "[T]he misappropriation theory premises liability on a fiduciary-turned-trader's deception of those who entrusted him with access to confidential information. *Id.*
>
> Ms. Bauer was a traditional insider. As an officer of Heartland Group, PFOF 32 (Ex. 3 at ¶ 18; Ex. 6 at 62), Ms. Bauer had a fiduciary duty not to use the material, non-public information for improper purposes.

(Doc. 414 at 23-24.)[1]

In ruling on the cross motions for summary judgment, this court never considered a misappropriation theory because it was not raised by the parties. The court started its discussion with three undisputed facts: Bauer was an insider at the time of her trade, she was in possession of nonpublic information on October 3, 2000, and she sold her securities on October 3, 2000. Bauer was an insider as she worked as the general counsel and chief compliance officer of the investment advisor, Heartland Advisors, Inc., from 1998 to November of 2002. From March of 2000 to March of 2001, she was the secretary and senior vice president of Heartland Group, Inc., an open-end, management investment company. HAI managed the mutual fund portfolio series of HGI and was the principle underwriter and distributor of the funds' shares. (Doc. 453 at 2.) Mindful of her position, the court turned to the requirements of the classical theory of insider trading and focused on the issues of materiality and scienter. (*Id.* at 20.)

On September 19, 2011, the SEC filed its unopposed motion to dismiss with prejudice "all allegations and all nine counts" of the First Amended Complaint against

---

[1]The citation refers to the page number of the brief prepared by the SEC rather than the page number that appears as a result of e-filing.

Bauer with the exception of the counts "relating solely to the insider trading found in the Court's May 25, 2011 decision." (Doc. 460.) The motion – as drafted by the SEC with revisions by Bauer – makes clear that the SEC moved to dismiss everything that was not discussed in this court's decision.

That the parties chose on appeal to focus on allegations and counts not discussed in the decision is significant because the misappropriation theory was never raised or argued in the eight years that this case remained pending. As a general matter, any theory not raised before the district court is considered to be waived or forfeited. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (explaining that a theory that is intentionally relinquished or abandoned is waived and will not be considered whereas a theory that simply wasn't raised is forfeited); *Image Technical Service, Inc. v. Eastman Kodak*, 903 F.2d 612, 615 n. 1 (9th Cir.1990) (holding that plaintiff's failure to raise an issue in opposition to a defendant's motion for summary judgment waived the issue), *aff'd*, 504 U.S. 541, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1991); *U.S. v. Munoz*, 746 F.2d 1389, 1390 (9th Cir. 1984) (refusing to consider a tort theory not raised in contract action below). The reasons supporting this rule have been explained by the Tenth Circuit as follows:

> First, appellate review of issues not raised before the district court would waste judicial resources and undermine the need for finality in judgments by requiring us often to remand cases for additional fact finding. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir.1993) (citations omitted). In addition, to allow a party to succeed on appeal under a theory that was not raised before the district court would severely frustrate the efforts of our trial courts and unjustly punish appellees who proceed through discovery, trial, and appeal believing that the issues raised below are the only issues that matter. *See Bradford v. United States*, 651 F.2d 700, 704–05 (10th Cir.1981).

*Vitkus v. Beatrice Co.*, 127 F.3d 936, 946 (10th Cir. 1997).

This circuit has taken a similar approach. In *Gambino v. Koonce*, the Seventh Circuit held that an issue not raised before the district court was waived. 2014 WL 2959130 (7th Cir. July 2, 2014)(citing *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 781 (7th Cir. 2013). Similarly, in *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 235 n. 7 (7th Cir. 1983), the Seventh Circuit commented that it was unclear on appeal whether a particular argument had been raised in the district court. Accordingly, the Seventh Circuit instructed that, if on remand it was determined that it had not been raised during the district court's initial determination of the case, the theory could not be raised. *Id.*

For the parties to pursue an appeal of this court's decision, they had to litigate the remaining claims or agree to the dismissal of all remaining claims with prejudice. Otherwise, they would not have had a final order from which to appeal. A district court's decision is final only if the "district court has finished with the case." *Minnesota Life Ins. Co. v. Kagan*, 724 F.3d 843, 847 (7th Cir. 2013.) Therefore, the only way for the parties to take up the issue of classical insider trading was to agree to treat the dismissal of all remaining allegations and claims as having been with prejudice. *See Nat'l Inspection & Repairs, Inc.v. George S. May Int'l Co.,* 600 F.3d 878, 883 (7th Cir. 2010).

The mandate from the Seventh Circuit discusses the SEC's failure to raise the misappropriation theory, but it does not appear that the parties focused on the effect of the dismissal of all remaining allegations and claims *with prejudice*. The Seventh Circuit commented that "the problem with the SEC's argument is that it never presented the misappropriation theory to the district court. Rather, the Commission argued below that

10

Bauer was a 'traditional insider' trading the shares of her own fund - an obvious invocation of the classical theory." *Bauer*, 723 F.3d at 770. Further, in a footnote, the Seventh Circuit squarely rejected the SEC's argument that it did not decide definitely between one theory or another in the district court or that the SEC adequately put Bauer on notice that she could be held liable under the classical or misappropriation theory of insider tradition. *Id.,* 723 F.3d at 771, n. 4.)

It is curious that the SEC so quickly abandoned the classical theory on appeal when it pursued the theory for so many years and there is no authority to extend the misappropriation theory to a corporate insider trading mutual fund shares. The Seventh Circuit Court of Appeals described the misappropriation theory as follows:

> Under the "misappropriation theory" of insider trading § 10(b) is violated when a corporate outsider "misappropriates confidential information for securities trading purposes in breach of a duty owed to the source of the information." *O'Hagan*, 117 S. Ct. at 2208. This qualifies as a "deceptive device" because the outsider trades on confidential information entrusted to him for nontrading purposes, and thereby "defrauds the principal of the exclusive use of that information." Id. Under the misappropriation theory, the disclosure obligation "runs to the source of the information" rather than the trading counterparty—an outsider entrusted with confidential information must either refrain from trading or disclose to the principal that he plans to trade on the information. *Id.* at 2208–09 n. 6. The misappropriation theory is "designed to protect the integrity of the security markets against abuses by 'outsiders' to a corporation who have access to confidential information that will affect the corporation's security price when revealed, but who owe no fiduciary or other duty to the corporation's shareholders." *Id.* at 2207–08.

*Bauer*, 723 F.3d at 770.

The case cited by the Seventh Circuit, *U.S. v. O'Hagan,* 521 U.S. 642, 652-53, 117 S. Ct. 2199 (1997), resolved a split in the circuits as to whether there could be a misappropriation claim for insider trading. The Supreme Court described the classical

theory and the misappropriation theory as complementary inasmuch as each addresses efforts to capitalize on nonpublic information through the purchase or sale of securities. However, "the classical theory targets a corporate insider's breach of duty to shareholders with whom the insider transacts; the misappropriation theory outlaws trading on the basis of nonpublic information by a corporate 'outsider' in breach of a duty owed not to a trading party, but to the source of the information." *Id.*, 521 U.S. at 652.

More recently, the Second Circuit Court of Appeals held that the misappropriation theory of insider trading did not apply to insiders accused of failing to disclose material, nonpublic information regarding unregistered securities. *Steginshky v. Xcelera Inc.,* 741 F.3d 365 (2d Cir. 2014). Applying the classical theory of insider trading, the Second Circuit commented in a footnote that the "alternative 'misappropriation theory' of insider trading, which targets non-insiders," was not applicable to the facts. *Id.,* 741 F.3d at 370 n. 4. In an earlier decision, the Second Circuit distinguished between the classical theory which involves corporate insiders and the misappropriation theory involving "persons who are not corporate insiders but to whom material non-public information has been entrusted in confidence and who breach a fiduciary duty to the source of the information to gain personal profit in the securities market." *U.S. v. Rajaratam*, 719 F.3d 139, 159 (2d Cir. 2013).

Similarly, the Ninth Circuit Court of Appeals has explained that the misappropriation theory reaches trading by corporate outsiders, not insiders. *S.E.C. v. Talbot*, 530 F.3d 1085, 1091 (9th Cir. 2008). The Eleventh Circuit also recognized this distinction between the two theories in *S.E.C. v Yun,* 327 F.3d 1263, 1269 (11th Cir. 2003). This court is not aware of any authority supporting the extension of the theory to the facts of this case

where, at all times, Bauer was a corporate insider. Moreover, no federal court has directly opined on whether, and to what extent, the insider trading theories apply to mutual fund redemptions, and the SEC has never brought a § 10(b) claim in the mutual fund context. *Bauer*, 723 F.3d at 769.

This court is not willing to extend the misappropriation theory to the insider trading claim in this case where the theory was never raised, and all allegations and counts not in the decision were dismissed with prejudice. Hence, the argument is not properly before this court. Moreover, no precedent supports the extension of this theory to Bauer. The SEC has not developed a "sound application of the misappropriation theory" or otherwise unraveled for this court "how an officer at a mutual fund investment adviser can be fairly considered a corporate 'outsider' given the investment adviser's deeply entwined role as sponsor and external manager of the fund." *Bauer*, 723 F.3d at 772. Now, therefore,

IT IS ORDERED that defendant Jilaine Bauer's motion for summary judgment is granted.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 29th day of August, 2014.

                                              BY THE COURT

                                              /s/ C.N. Clevert, Jr.
                                              C.N. CLEVERT, JR.
                                              U.S. DISTRICT JUDGE